UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SERENA WU,

                Plaintiff,

       -against-                         **REPORT AND**
                                          **RECOMMENDATION**

GOOD SAMARITAN HOSPITAL MEDICAL
CENTER, et al.,                          17-CV-4247 (SJF)(ARL)

                Defendants.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Plaintiff Serena Wu ("Plaintiff") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981,  New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYSHRL")  and New York Labor Law ("NYLL") § 215(1)(a) against Defendants Good Samaritan Hospital Medical Center (the "Hospital"), Catholic Health Services of Long Island, Inc. ("CHS") and Benjamin Schwartz, M.D. (collectively, the "Hospital Defendants") and Defendants Madonna Physician Services, P.C. ("Madonna") and Jonathan Gillen-Goldstein, MD (collectively, the "Madonna Defendants" and together with the Hospital Defendants, "Defendants"), alleging, *inter alia*, that Defendants discriminated against her on the basis of race, national origin and gender, in connection with her employment.  Before the Court, on referral from District Judge Feuerstein, are the motions of the Hospital Defendants and the Madonna Defendants to dismiss the Amended Complaint ("Am. Compl.") pursuant to Federal Rule of Civil Procedure ("Rule")12(b)(6) and 9(b).  For the reasons set forth below, the Court respectfully recommends that the motions be granted.

## BACKGROUND

### I. Factual Averments

The following facts are drawn from the Amended Complaint and the documents attached thereto which include Notice of the Right to Sue (Ex. A), Employment Agreement between Plaintiff and the Hospital, unsigned (Ex. B), Contract Renewal Correspondence (Ex. C), Notice of Non-Renewal (Ex. D), Correspondence Re: Continuing Employment (Ex. E), Letter to Patients of the Hospital (Ex. F), and Correspondence with Madonna (Ex. G). The allegations in the Amended Complaint and the documents attached thereto are taken as true for the purposes of this motion.

Plaintiff, an Asian American female of Taiwanese descent, worked for the Hospital as an employed physician in the Department of Obstetrics, Center for Maternal Fetal Medicine, from September 13, 2012 through August 19, 2015. Am. Comp. ¶¶ 7-8, 11, 18. Plaintiff became certified OB/GYN in 2013 and was certified as a Maternal Fetal Medicine ("MFM") specialist in 2015. *Id*. ¶ 7.

The Hospital is a not-for-profit acute care hospital located in West lslip, New York and a member institution of CHS, an integrated network of healthcare providers in Nassau and Suffolk, New York. *Id*. at ¶¶ 2-4. Defendant Benjamin Schwartz is an administrator at the Hospital and at certain times during the relevant period, was the Chairman of the Department of Obstetrics and Gynecology at the Hospital. *Id*. at ¶ 5

Defendant Madonna is a regional healthcare company that operated obstetrical offices in Nassau and Suffolk, New York. *Id*. at ¶ 4. Madonna provides obstetrical testing and services, including MFM services to community obstetricians and hospitals. *Id*. Defendant Jonathan Gillen-Goldstein is a principal of Madonna and OB/GYN certified. *Id.* at ¶ 6.

2

Plaintiff was employed by the Hospital pursuant to a two-year employment agreement (the "Agreement"), with a term commencing on August 20, 2012 and ending on August 19, 2014. *Id*. at ¶¶ 11-12; Ex. B. Plaintiff alleges that the Hospital extended the Agreement for one year with the term ending on August 19, 2015. *Id*. at ¶ 14. According to Plaintiff, she was led to believe by Defendant Schwartz and other Hospital representatives that her contract would be renewed. *Id.* at ¶¶ 15, 17. Plaintiff alleges that these conversations occurred in May 2015, just prior to her receipt of the termination notice. *Id*. ¶ 18.

Plaintiff alleges that the termination was in retaliation for events that transpired months earlier in September 2014. Id. at ¶¶ 56, 117. At that time, Plaintiff filed a complaint with the Hospital regarding a dispute with Joseph Livoti, M.D., a physician in private practice who was not a Hospital employee, concerning the care of a patient. *Id*. at ¶¶ 39-56. Plaintiff alleges that when Dr. Livoti learned of her complaint he used "abusive, harassing, and threatening language when speaking to her." *Id*. at ¶ 45. Plaintiff filed a second complaint with the Hospital charging Dr. Livoti with "racially motivated and sexist harassment." *Id*. at ¶ 46. The Hospital investigated Plaintiff's complaints and determined that Dr. Livoti did not engage in improper medical practices. *Id*. at ¶¶ 49-53. The Hospital requested that Dr. Livoti apologize for his unprofessional behavior. *Id*. at ¶¶ 49-50. According to Plaintiff, her "report of Dr. Livoti's negligence, malpractice and discriminatory harassment resulted in her being verbally abused and triggered a work environment where her professionalism was questioned." *Id*. at ¶ 53. Plaintiff further claims her patient notes were investigated in retaliation for the complaints she lodged against Dr. Livoti. *Id*. at ¶ 55.

In April 2015, Hospital administration decided to engage Madonna, a private medical practice, to provide maternal fetal medicine services at a number of CHS facilities, including the

3

Hospital. *Id*. at ¶ 30. On May 15, 2015, the Hospital sent Plaintiff a letter notifying her that it would not renew the Agreement and that her employment would end on August 19, 2015. *Id*. at Ex. D, Non-renewal Letter. According to the letter, Plaintiff was informed that "the Hospital plans to transition its maternal fetal medicine line to a third party group" and the Hospital was interested in Plaintiff seeking employment with that group. *Id*. The letter further stated that "your employment with the Hospital pursuant to the Agreement will terminate effective August 19, 2015. If your employment with the Hospital continues beyond August 19, 2005, it will be as an 'Employee at Will.'" *Id*. On August 13, 2015, Plaintiff notified the Hospital that her contract negotiations with Madonna had been unsuccessful for several reasons, including a pay reduction, increased travel and a request that she perform abortions. *Id*. at Ex. E.[1] By letter dated August 18, 2015 CHS, in response to a request made by Plaintiff, reiterated that Plaintiff's contract expired on August 19, 2015 and rejected Plaintiff's request for an extension of that contract until September 18, 2015. *Id*. at Ex. E. CHS stated that it was willing to extend consideration to Plaintiff as an employee at will as of August 20, 2015 in exchange for a letter of resignation noting that her resignation would be effective September 18, 2015 and "a written release in a form reasonably satisfactory to CHS." *Id*. Plaintiff did not accept this offer. *Id*. at ¶ 23. According to Plaintiff, CHS' request that she sign a waiver was discriminatory. *Id*. at ¶ 25.

Throughout the summer of 2015 there were negotiations between Madonna and Plaintiff regarding the terms of a possible employment contract. *Id*. at ¶¶ 33-36. Plaintiff ultimately declined the offer. *Id*. Plaintiff has attached to the Amended Complaint correspondence discussing changes she proposed to the contract offered by Madonna, including a pay increase, increased vacation time, limited hours, limited deliveries, limited travel and a request that she

---

[1] The Court notes that the August 13, 2015 correspondence attached to Plaintiff's Amended Complaint is missing page 2.

not perform abortions.  *Id.* at Ex. G.  Through the course of the negotiations Madonna agreed to certain of Plaintiff's requests, including an increased salary and a request that she not perform abortions, and did not agree to others -- hours would not be limited, deliveries would not be limited and vacation time would start at four weeks.  *Id*.  Ultimately Madonna and Plaintiff were unable to reach an agreement on the terms of her contract.  *Id*. Plaintiff alleges that Defendant Goldstein made her "uncomfortable, and made unprofessional remarks to her when she met him alone for a meeting to discuss the employment offer."  *Id*. at ¶ 37.  Plaintiff does not describe the remarks that were made.  Plaintiff also alleges that following her termination, several Hospital employees reported to her that Defendant Goldstein had been making false and defamatory statements about her.  *Id*. at ¶ 38.  The substance of the statements is not alleged.   Plaintiff's employment with the Hospital ended on August 19, 2015.  *Id*. at ¶ 23.

In the Amended Complaint Plaintiff asserts 19 causes of action arising out of the above described conduct: unlawful discharge due to discrimination based on race, nation origin and sex in violation of Title VII against the Hospital Defendants (Count One), unlawful discharge due to intentional discrimination based on race in violation of 42 U.S.C. § 1981 against the Hospital Defendants (Count Two), unlawful discharge due to discrimination based on race, national origin, and sex in violation of the NYSHRL against the Hospital Defendants (Count Three); retaliation in violation of Title VII against the Hospital Defendants (Count Four); retaliation in violation of NYSHRL § 296 against the Hospital Defendants (Count Five), unlawful retaliation in violation of NYLL § 215(1)(a) against the Hospital Defendants (Count Six), failure to hire due to discrimination based on race, national origin and sex in violation of Title VII against all Defendants (Count Seven), failure to hire based on race in violation of Section 1981 against all Defendants (Count Eight), failure to hire due to discrimination based on race, national origin and

sex in violation of NYSHRL against all Defendant (Count Nine), creation of a hostile work environment due to discrimination based on race, national origin and sex in violation of Title VII against the Hospital Defendants (Count Ten), discrimination in wages based on sex in violation of the Equal Pay Act ("EPA"), 29 U.S.C. §206 et seq against all Defendants (Count Eleven), discrimination in wages based on sex in violation of Title VII against all Defendants (Count Twelve), discrimination in wages based on sex in violation of NYSHRL against all Defendants (Count Thirteen), discrimination in wages based on sex in violation of NYLL § 194 against all Defendants (Count Fourteen), breach of contract against the Hospital Defendants (Count Fifteen), breach of the implied covenant of good faith and fair dealing against the Hospital Defendants (Count Sixteen), fraud and misrepresentation against all Defendants (Count Seventeen), intentional infliction of emotional distress (Count Eighteen), and negligent infliction of emotional distress against all Defendants (Count Nineteen).

## II.  Procedural History

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Commission ("EEOC") on June 16, 2016.  Am. Compl. ¶¶ 5, 57.  The EEOC referred the matter to mediation, however Defendants refused to participate in the mediation.  *Id*. at ¶¶ 59-62.  On April 18, 2017, the EEOC issued Plaintiff a right to sue letter.  *Id*.  ¶ 5.  Plaintiff filed the original complaint in this action on July 17, 2017.  ECF No. 1.  In September and October 2017, Defendants served Plaintiff with motions to dismiss the original complaint.  ECF Nos. 26, 29.  Plaintiff filed an Amended Complaint on October 27, 2018.  ECF No. 32.  Defendants moved to strike the Amended Complaint for failure to comply with Rule 15(a)(1)(B).  ECF No. 37.  By Order dated November 28, 2017, Judge Feuerstein denied Defendants' request to strike the amended pleading and set a briefing schedule for Defendants' renewed motion to dismiss.  ECF No. 39.  Both sets

of Defendants moved to dismiss the Amended Complaint on March 6, 2018. ECF No. 46. In support of their motion to dismiss the Hospital Defendants rely upon Good Samaritan Hospital Medical Center, Catholic Health Services of Long Island, Inc. and Benjamin Schwartz, M.D.'s Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint ("Hosp. Def. Mem.") and Declaration of Christopher G. Gegwich Esq. in Support of Good Samaritan Hospital Medical Center, Catholic Health Services of Long Island, Inc. and Benjamin Schwartz, M.D.'s Motion to Dismiss the Complaint. The Madonna Defendants rely upon Defendants Madonna Physicians Services, P.C.'s and Jonathan Gillen-Goldstein's Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint ("Mad. Def. Mem.") and the Affidavit of Jonathan Gillen-Goldstein, MD. Plaintiff has responded to the motion to dismiss and relies upon Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Mem."). By Order dated April 2, 2018, Judge Feuerstein referred the motions to the undersigned for a report and recommendation.

## DISCUSSION

### I. Standard of Review

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted)).

## II. Analysis

### A.  Materials the Court May Consider on this Rule 12(b) Motion

"The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint but does not weigh the evidence that might be offered to support it." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).  Thus, in adjudicating a motion under Rule 12(b), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted).  "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). "'In most instances

8

where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint." *Id. (quoting Global Network*, 458 F.3d at 157)).  In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *Global Network*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

In connection with the motion to dismiss, the Madonna Defendants submit the Affidavit of Jonathan Gillen-Goldstein in Support of the Motion to Dismiss, which attached documents outside of the Amended Complaint.  ECF No. 50.  To the extent these materials raise matters outside of the complaint that are not integral thereto, the Court will not consider them.  *See Goel*, 820 F.3d at 559-60 (finding that affidavit which was not integral to the complaint could not be considered on motion to dismiss); *Gesualdi v. S. Di Fazio & Sons Constr., Inc.*, No. 16-CV-5209 (SJF) (ARL), 2017 U.S. Dist. LEXIS 205202 (E.D.N.Y. Dec. 12, 2017) (declaration of principal of Defendant not considered for purposes of motion to dismiss).

### B.  Timeliness Of Plaintiff's Claims

As a threshold matter, the Court addresses Defendants' contention that Plaintiff's Title VII claims are barred by the statute of limitations.  The Hospital Defendants argue that Count One, for unlawful discharge pursuant to Title VII, Count Four for retaliation pursuant to Title VII; Count Seven for failure to hire pursuant to Title VII; Count Ten for hostile work environment under Title VII; and Count Twelve for wage discrimination under Title VII must all

9

be dismissed as untimely.  Similarly, the Madonna Defendants argue that Count Seven for failure to hire pursuant to Title VII and Count Twelve for wage discrimination under Title VII are untimely.

Under Title VII, a plaintiff must file an administrative charge with the EEOC within 300 days after a claim accrues.  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). "This [300-day] requirement functions as a statute of limitations, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Id*. at 763; *Crawford v. North Shore - Long Island Jewish Health Sys.*, No. CV 13-3894 (JFB)(ARL), 2016 U.S. Dist. LEXIS 22061 at * 42 (E.D.N.Y. Feb. 16, 2016).

Plaintiff argues that her charge of discrimination was filed with the EEOC on June 14, 2016 because that is when Plaintiff faxed it to the EEOC.  Am. Compl. ¶ 57.  The Hospital Defendants argue that the charge of discrimination is deemed filed when it is stamped received by the EEOC, in this case June 16, 2016.  Hosp. Def. Mem. at 5.  The Court agrees.  "A charge is not considered to be filed with the EEOC until the EEOC receives the charge and stamps it with the appropriate date."  *Allen v. N.Y. City Dep't of Envtl. Prot.*, 51 F. Supp. 3d 504, 510 n.3 (S.D.N.Y. 2014); *see also Gharzouzi v. Nw. Human Servs. of Penn.*, 225 F. Supp. 2d 514, 523-24 (E.D. Pa. 2002) (finding that the plaintiff's "charge was filed with the EEOC on the date the agency received his sworn, detailed complaint"); *Koch v. CGM Grp.*, Inc., No. 00-CV-216, 2001 U.S. Dist. LEXIS 5558, 2001 WL 392523, at *7 (S.D. Ind. Apr. 3, 2001) ("Although the EEOC charge, which [the defendant] has attached as Exhibit A, was signed and notarized on May 19, that does not mean that it was 'filed' on that date, in the legally required sense. A charge is not considered to be filed with the EEOC until the EEOC receives the charge and stamps it with the appropriate date.") (citations omitted). Thus, the operative date in this case is June 16, 2016, the

10

date stamped received by the EEOC and any claim arising out of alleged discriminatory conduct occurring prior to August 21, 2015 is untimely.

While the continuing violations doctrine may extend the limitations period for claims of discriminatory acts committed under an ongoing policy of discrimination, it is limited in application and does not preserve untimely claims related to "discrete, completed employment actions such as transfers, . . . ." *Sundram v. Brookhaven National Laboratories,* 424 F. Supp.2d 545, 560 (E.D.N.Y. 2006) (citing *Griffin v. New York City Off-Track Betting Corp.*, 2002 U.S. Dist. LEXIS 2793, 2002 WL 252758, at *2 (S.D.N.Y. Feb. 20, 2002) (citing *Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 907 (2d Cir. 1992) (citations omitted)).  The Supreme Court has explained that, notwithstanding the continuing violations doctrine, because a discrete discriminatory act occurs on the day that it happened, a party must file her charge within 300 days of the act or lose the ability to recover for it.  *AMTRAK v. Morgan*, 536 U.S. 101, 113-14, 122 S. Ct. 2061, 2072-73, 153 L. Ed. 2d 106 (2002) (reversing application of the continuing violations doctrine to what the Ninth Circuit Court of Appeals termed 'serial violations' because "discrete discriminatory acts are not actionable if time-barred even when they are related to act alleged in timely filed charges.").  "The continuing violation exception makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a 'continuous policy and practice of discrimination' and at least one act in that policy and practice took place within the limitations period." *Jackson v. N.Y. State Office of Mental Health*, No 11-cv-7832, 2012 U.S. Dist. LEXIS 165876, 2012 WL 5862741, at *2 (S.D.N.Y. Nov. 15, 2012). Thus, in order for Plaintiff's claims to be deemed timely at least one of the discrete discriminatory acts must have occurred within 300 days from the filing of the charge with the EEOC.

Plaintiff's last day of work was August 19, 2015 (Am. Compl. ¶ 23), however she received notice that her last day would be August 19 on May 16, 2015. *Id*. ¶¶ 18, 23. "The 300-day period starts to run when the claimant receives notice of the allegedly discriminatory act, not when the allegedly discriminatory decision takes effect." *Thompson v. FRB,* 242 F. Supp. 2d 368, 369 (S.D.N.Y. 2003) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980); *DeSalvo v. Metro. Opera Ass'n Inc*., No. 96 Civ. 8292 (DC), 1997 U.S. Dist. LEXIS 8619, 1997 WL 337517, at *2 (S.D.N.Y. June 19, 1997); *see also Miller v. IT&T Corp*., 755 F.2d 20, 23 (2d Cir.) (limitations period begins to run "on the date when the employee receives a definite notice of the termination"), *cert. denied*, 474 U.S. 851 (1985)). With respect to Plaintiff's unlawful termination claim (Count One), retaliation claim (Count Four), failure to hire claim (Count Seven), hostile work environment claim (Count Ten) and wage discrimination claim (Count Twelve) the final act alleged on the part of the Hospital Defendants was the May 16, 2015 letter notifying Plaintiff that her contract would not be renewed. *See, e.g*., Am. Compl. ¶¶ 73, 74, 105, 181-184   Thus, Plaintiff's causes of action against the Hospital Defendants under Title VII accrued on May 16, 2015 at the very latest, well before the August 21, 2015 cut-off.[2]

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the Hospital Defendants under Title VII (Counts One, Four, Seven, Ten and Twelve) be dismissed with prejudice.

With respect to the Madonna Defendants' motion to dismiss Plaintiff's claims against them for failure to hire and wage discrimination in violation of Title VII (Counts Seven and

---

[2]  Plaintiff contends her claim is timely because "[t]he statement of claim was deemed timely filed by the EEOC." Pl. Mem. at 9.  "The fact that the EEOC processed the charge anyway and issued plaintiff a Notice of Right to Sue is not dispositive on the timeliness issue." *Valente v. Moore Business Forms, Inc*., 596 F. Supp. 1280, 1288 (D. Vt. 1984).

Twelve), as discussed above, the applicable limitations period for Plaintiff's claims is 300 days

prior to the filing of charges with the EEOC. Thus, any claim accruing prior to August 21, 2015

is time-barred. Plaintiff has attached to her complaint correspondence relating to negotiations

between the Madonna Defendants and Plaintiff regarding the negotiation of the terms of her

contract, including her salary. The date of the last attachment is August 6, 2015, prior to the cut-

off date.

Plaintiff's failure to hire claim alleges that the Madonna Defendants harassed and

threatened Plaintiff when she met with Defendant Goldstein to negotiate a new position and she

was only offered a job under less favorable terms than doctors of other racial backgrounds at

Madonna. Am. Compl. ¶¶ 141-143. "[T]he continuing violation doctrine generally does not

apply to 'failure to hire' cases such as this one." *E.E.O.C. v. Cushman & Wakefield, Inc*., 643 F.

Supp. 209, 214 (S.D.N.Y. 1986) ("[A]cts concerning hiring . . . do not constitute continuing

violations.") (internal quotation marks and citations omitted); *Wilkins v. New York City Dep't of

Prob.,* No. 98 Civ. 6611 (DAB), 2001 U.S. Dist. LEXIS 2621, 2001 WL 262601, at *3

(S.D.N.Y. Mar. 15, 2001) ("When only an isolated incident of non hiring is alleged, as Plaintiff

does here, the continuing violation exception does not apply."); *Mareno v. Madison Square

Garden, L.P*., No. 98 Civ. 2719 (WHP), 1999 U.S. Dist. LEXIS 15265, 1999 WL 777952, at *5

(S.D.N.Y. Sept. 29, 1999) (dismissing Title VII failure to hire claims, and holding that "[t]he

continuing violation doctrine is inapplicable in this case"). A failure to hire claim accrues when

Plaintiff was informed or had reason to know of the failure to hire. *See Delaware State Coll. v.

Ricks,* 449 U.S. 250, 258, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980) (Title VII claims accrued "at

the time the [discriminatory act occurred and was] communicated to [the plaintiff]"). While the

Madonna Defendants argue that they never "failed to hire" Plaintiff, it was her decision not to

accept the terms of the contract, nevertheless, the last correspondence relating to the contract negotiations was dated August 6, 2015, and therefore this claim is untimely.

Plaintiff's wage discrimination claim alleges that "[u]pon information and belief, [Plaintiff] was offered less than the rate which an employee of the opposite sex at Madonna was paid for a job requiring equal skill and performed under similar working conditions."  Am. Compl. ¶ 182.  Pursuant to the Ledbetter Fair Pay Act (the "Ledbetter Act"), 42 U.S.C. § 2000e-5(e), the continuing violation doctrine allows Plaintiff to seek relief under Title VII for continuing pay discrimination, if any, about which she timely complained.  The last discussion regarding pay alleged in the Complaint is August 6, 2015, which is untimely, and therefore this claim is time-barred.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the Madonna Defendants under Title VII (Counts Seven and Twelve) be dismissed with prejudice.

### C.  The Discrimination Claims

Plaintiff broadly alleges discrimination on the basis of race, national origin and sex, and because she reported the wrongdoing by another doctor to her supervisors.  The crux of Plaintiff's claim is that there can be no other explanation for the fact that she was terminated by the Hospital Defendants' and not hired by the Madonna Defendants other than discrimination. She identifies no discriminatory comments about herself or other member of any protected class nor has she alleged facts demonstrating a favoritism towards individuals outside of her protected class.  Plaintiff's only allegation pertaining to race and gender discrimination is that the Hospital "terminated both Plaintiff and her only female co-worker, to replace them with three male doctors, two of whom were Caucasian and one of whom was African American."  Am. Compl. at ¶ 80.

14

Plaintiff raises her discrimination claims under two separate federal statutes, Title VII[3] and Section 1981, as well as two state statutes, NYHRL and NYLL.  The Court considers the claims together in determining the sufficiency of Plaintiff's factual allegations, since the "same framework and pleading standard" govern all of these statutes.  *Awad v. City of New York,* No. 13-cv-5753 (BMC), 2014 U.S. Dist. LEXIS 63234, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014); *Lumhoo v. Home Depot United States*, 229 F. Supp. 2d 121, 136 (E.D.N.Y. 2002) (New York state employment discrimination laws are analyzed used the same framework as Title VII claims).

### 1.    Individual Liability Under Title VII

Plaintiff has asserted Title VII claims against all Defendants in Counts Seven and Twelve and against the Hospital Defendants in Counts One and Four.  With respect to the individual defendants named in this action – Benjamin Schwartz and Jonathan Gillen-Goldstein -- all Title VII claims asserted against them should be dismissed because individuals are not subject to liability pursuant to Title VII.  *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009); *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).  Accordingly, the undersigned respectfully recommends that Counts One, Four, Seven, and Twelve be dismissed as to Defendants Schwartz and Gillen-Goldstein, with prejudice.

### 2.    Pleading Standard for Discrimination Claims

"Under *Iqbal* and *Twombly*, . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86 (2d Cir. 2015).  Although "an employment

---

[3] Although this Court recommends dismissal of Plaintiff's Title VII claims as time-barred the analysis set forth below applies with equal weight to those claims.

discrimination plaintiff need not plead a prima facie case of discrimination," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), "dismissal is nevertheless appropriate where the plaintiff 'failed to allege even the basic elements of a discriminatory action claim.'" *Maldonado v. George Weston Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011) (quoting *Patane v. Clark,* 508 F.3d 106, 112 n.3 (2d Cir. 2007) (per curiam); *see also De La Pena v. Metropolitan Life Ins. Co.,* No. 13-2852-cv, 552 Fed. Appx. 98, 2014 U.S. App. LEXIS 1760, 2014 WL 308005, at * 1 (2d Cir. Jan. 29, 2014) (holding that a dismissal of an employment discrimination claim "for failure to allege facts showing a plausible inference of discrimination is wholly consistent with Swierkiewicz").  "The sine qua non of a . . . discriminatory action claim . . . is that 'the discrimination must be because of '" race.  *Patane*, 508 F.3d at 112 (emphasis in original) (quoting *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016) ("[T]he sine qua non of a . . . discriminatory action claim under Title VII is that the discrimination must be because of the employee's protected characteristic.") (citation and internal quotation marks omitted).

"Therefore, to avoid dismissal, a plaintiff must allege facts supporting 'a facially plausible inference that the [d]efendants' actions were motivated by [discriminatory] animus.'" *Jones v. City of New York*, 14-CV-0826 (CBA) (RLM), 2015 U.S. Dist. LEXIS 13951 (quoting *De La Peña v. Metro. Life Ins. Co.,* 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014)); *see also Idlisan v. N. Shore-Lone Island Jewish Health Sys., Inc.,* No. 13-cv-2345 (SJF) (GRB), 2014 U.S. Dist. LEXIS 71578, 2014 WL 2157540, at *6-7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claims because "the complaint fails to plead any facts linking defendant's [actions] to [plaintiff's] race [or] national origin").  "Naked assertions of []

discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss." *Gaddy v. Waterfront Comm'n*, No. 13-cv-3322 (AT) (HBP), 2014 U.S. Dist. LEXIS 139007, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald assertions of discrimination . . . unsupported by any comments, actions, or examples . . . from which we could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss.")

### 2.  Failure To Allege Discriminatory Animus

In her first, second, third, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth causes of action, Plaintiff contends that all Defendants unlawfully discriminated against her, failed to hire her and paid her a lower wage because of her race, national origin and sex.  The Hospital Defendants argue that these claims must be dismissed because Plaintiff fails to provide any factual allegations supporting her claim of discrimination.  Hosp. Def. Mem. at 7-9.  Plaintiff's only response is that the Amended Complaint includes a five page set of facts and asserts seventeen causes of action[4] and alleges that "she was told by Defendants that her contract would be renewed up until a few months before it was set to expire, terminated early and directed to apply to a third party provider where she would be paid considerably less in order to keep working with her patients."  Pl. Mem at 2.

Title VII, Section 1981 and the NYSHRL require a plaintiff to "come forth with [some] evidence of discrimination, because this element distinguishes a section 1981 claim from a state-law tort." *Bishop v. Toys R Us-NY, LLC*, No. 04 CV 9403 (PKC), 2009 U.S. Dist. LEXIS 17377,

---

[4] The Amended Complaint actually asserts nineteen causes of action.

2009 WL 440434, at *6 (S.D.N.Y. Feb. 19, 2009), *aff'd sub nom. Bishop v. Toys R Us*, 385 F.

App'x 38 (2d Cir. 2010)  (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir.2004)

(evidence of discriminatory intention essential to a section 1981 claim)); *Yusuf v Vassar College*,

35 F. 3d 709, 713 (2d Cir. 1994) (naked assertions of racial motivation will not suffice)).

   Although Plaintiff checks off a laundry list of acts of "discriminatory conduct" (failure to

hire, termination of employment, wage discrimination, and discrimination), nowhere in her

Amended Complaint does Plaintiff set forth any facts which state directly or by inference that

any such actions were taken by the Hospital Defendants on the basis of her race, national origin

or gender.  Plaintiff does not identify any comments referencing her Asian race, Taiwanese

origin or her gender.  "Indeed, the plaintiff's claim 'must offer more than conclusory statements'

and 'the complaint must contain factual allegations supporting the plausible inference that the

employer discriminated against the plaintiff because of the plaintiff['] protected characteristic."

*Harris v. NYU Langone Med. Ctr.,* No. 12 Civ. 454, 2013 U.S. Dist. LEXIS 99328, 2013 WL

3487032 (S.D.N.Y. July 9, 2013) (internal citation omitted); *see also Samuel v. Bellevue*

*Hospital Center*, 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming

dismissal of employment discrimination claim due to the plaintiff's failure to "allege sufficient

facts to render plausible his conclusory assertion that the defendants discriminated against him

on the basis of his membership in a protected class"); *Brown v. Henderson*, 257 F.3d 246, 252

(2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only

when it occurs because of an employee's . . . protected characteristic."); *Briggs v. SCO Family of*

*Servs.*, No. 16-CV-3882 (JFB)(SIL), 2019 U.S. Dist. LEXIS 24528 (E.D.N.Y. Feb. 13, 2019)

(complaint dismissed because no allegations linking adverse employment action to membership

in a protected class).  Plaintiff here has not offered a single allegation supporting an inference of

discrimination.

Accordingly, this Court respectfully recommends that Plaintiff's claims against the Hospital Defendants in Counts One, Two, Three and Ten and against all Defendants in Counts Seven, Eight, Nine, Eleven, Twelve, Thirteen and Fourteen be dismissed pursuant to Rule 12(b)(6).

### 3.    Hostile Work Environment

Plaintiff asserts a hostile work environment claim against the Hospital Defendants in Count Ten of the Amended Complaint. As discussed above, this claim is not timely and should be dismissed. In addition, also discussed above, Plaintiff has failed to allege any factual support for her claim of race, national origin and sex discrimination. Because the Court has already discussed two independent grounds supporting dismissal of this claim, the remaining arguments advanced by the Hospital Defendants will not be addressed.

### 4.    Wage Discrimination

Plaintiff asserts claims for wage discrimination against all Defendants under the EPA, Title VII, NYSHRL and NYLL (Counts Eleven, Twelve, Thirteen and Fourteen). As discussed above, Plaintiff has failed to allege evidence of discriminatory animus sufficient to support her claim under Title VII or NYSHRL and her Title VII claim is not timely. "EPA claims are analyzed under the same general standards as Title VII claims but do not require a showing of discriminatory intent." *Bass v. World Wrestling Fed'n Entm't*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001). "Claims for violations of the Equal Pay Act and the [NYLL] may be evaluated under the same standard." *Volpe v. Nassau Cnty.,* 915 F. Supp. 2d 284, 291 n.5 (E.D.N.Y. 2013) (quoting *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001)).

Plaintiff repeats the same allegation of discrimination in support of each of these claims:

upon information and belief, Plaintiff was paid less than employees of the opposite sex at the Hospital and was offered less that employees of the opposite sex at Madonna.  Am. Compl. ¶¶ 173, 174, 175, 181, 182, 188, 189, 195, 196.  Plaintiff also alleges that the Hospital employed Dr. Goldstein, who did not have the MFM certification that Plaintiff has, and paid him a higher wage than Plaintiff.  *Id*. at ¶¶ 183, 190, 197.  These allegations are not consistent with the remainder of the Amended Complaint, which alleges that Defendant Goldstein was the managing partner at co-defendant Madonna, and not an employee of the Hospital.  *Id*. at ¶ 6. Other than this conclusory and inaccurate allegation, Plaintiff's Amended Complaint lacks any additional factual support for her claim of wage discrimination.

A successful gender-based wage discrimination claim requires the plaintiff to prove that her employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 41 L. Ed. 2d 1, 94 S. Ct. 2223 (1974) (Equal Pay Act).      At the pleading stage, "[t]o state a claim for EPA relief, plaintiff must assert that: (1) her employer pays different wages to employees of the opposite sex; (2) employees paid disparate salaries perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 414 (E.D.N.Y. 2010) (citing *Klein v. N.Y. Univ.*, 07-CV-160, 2008 U.S. Dist. LEXIS 62540, at *8-*9 (S.D.N.Y. Aug. 14, 2008); *Bronzini v. Classic Sec. LLC,* 08-CV-475, 2009 U.S. Dist. LEXIS 2865, at *19 (S.D.N.Y. Jan. 15, 2009)).

Plaintiff's unsupported "belief" that male employees were receiving higher compensation is insufficient at even at the pleading stage to state a claim for wage discrimination.  *See*

20

*Saunders v. Queensborough Cmty. Coll.,* No. 13 CV 5617 (PKC) (RML), 2015 U.S. Dist. LEXIS 128608 * 27, 2015 WL 5655719 (E.D.N.Y. Sept. 24, 2015); *Emmons*, 715 F. Supp. 2d at 414; *Rose v. Goldman. Sachs & Co.,* 163 F. Supp. 2d 238, 244 (S.D.N.Y. 2001) (finding that "nothing more than bald assertions that [a plaintiff] and male employees . . . received disparate wages for substantially equal jobs under similar working conditions . . . are too conclusory to state a claim under the Equal Pay Act").  Conclusory allegations based upon information and belief are insufficient to support a claim of wage discrimination.  *See Rivera v. Children's & Women's Physicians of Westchester, LLP,* No. 16 Civ. 714 (PGG) (DCF), 2017 U.S. Dist. LEXIS 39527 (S.D.N.Y. Mar. 18, 2017) (dismissing complaint where plaintiff "does not identify any male employee who performed substantially similar work to Plaintiff, and who was compensated at a higher hourly rate . . . Plaintiff's allegations are too vague and conclusory to survive Defendant's motion to dismiss"); *Abreu Suzuki v. State Univ. of N.Y. College,* No. 08-CV-4569 (TCP), 2013 U.S. Dist. LEXIS 83555 at *10, 2013 WL 2898135 (E.D.N.Y. June 13, 2013) ('[b]ald allegations that male employees were paid more than female employees, however, will not survive a motion to dismiss"); *Bass v. World Wrestling Fed'n Entm't*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001) ("[e]ven at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim. A plaintiff must allege at least some facts to support contentions that her employer violated the EPA"); *Lacey v. Carroll McEntee & McGinley, Inc,* 1994 U.S. Dist. LEXIS 15298, No. 93 CIV. 8832 (KTD), 1994 WL 592158, at *3 (S.D.N.Y. Oct. 26, 1994) (dismissing an EPA claim when the plaintiff "alleged disparate wages, equal performance level and similar working conditions but did not supply any facts to support her allegations").

Next, Plaintiff fails to allege "how his or her position and the comparison position were

21

substantially similar." *Abreu Suzuki,* 2013 U.S. Dist. LEXIS 83555 at *10.  Plaintiff offers no comparable positions at the Hospital but rather attempts to use the Madonna employees as comparators.  However, based upon the allegations in the Amended Complaint, these employees were not comparable because they were required to have privileges a multiple hospitals, perform deliveries on a regular basis which Plaintiff was not required to do at the Hospital and work longer hours. Am. Compl. ¶¶ 34, 35, 36.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims for wage discrimination under the EPA and NYLL asserted against all Defendants (Counts Eleven and Fourteen) be dismissed.

### D.  Retaliation Claims

#### 1.   Title VII and NYSHRL

Plaintiff asserts claims against the Hospital Defendants for retaliation pursuant to Title VII and NYSHRL alleging that she was retaliated against by the Hospital Defendants for reporting misconduct by another doctor (Counts Four and Five).  Am. Compl. ¶¶ 101-133.  As previously discussed, Plaintiff's claim under Title VII is time barred.

"Retaliation claims are analyzed under the same standard for NYSHRL and Title VII." *Gomez v. Stonybrook Univ.*, No. CV 14-7219 (SJF)(GRB), 2016 U.S. Dist. LEXIS 16542 (E.D.N.Y. Jan. 28, 2016).  To prevail on a retaliation claim, the plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316; *see also Vega*, 801 F.3d at 90.

The Hospital Defendants argue that Plaintiff fails to adequately allege she engaged in a protected activity.  "Two activities qualify as 'protected activities': where an employer retaliates

against plaintiff because (1) she opposed any practice made unlawful by Title VII, or (2) she made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Gomez*, 2016 U.S. Dist. LEXIS 16542 at *22 (internal quotations omitted). Under the first protected activity, the Supreme Court has held "'[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes employee's opposition to the activity." *Crawford v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276, 129 S. Ct. 846, 172 L. Ed. 2d 650 (2009). Here, Plaintiff reported discriminatory and racially motivated harassment by Dr. Livoti (who is not alleged to be an employee of the Hospital, but rather a private practice physician with privileges at the Hospital). Am. Comp. ¶ 39. This complaint is not directed at an employment practice of the Hospital and therefore does not qualify as protected activity for purposes of a Title VII or NYSHRL retaliation claim. *See, e.g., Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013) ("the plaintiff is 'required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII'") (internal quotations omitted); *Viscecchia v. Alrose Allegria LLC*, 117 F. Supp. 3d 243, 257 (E.D.N.Y. 2015) ("Further, a plaintiff's belief 'is not reasonable simply because he or she complains of something that appears to be discrimination in some form,' rather the complaint or opposition must be 'directed at an unlawful employment practice of his employer'"). The statements made by Dr. Livoti and complained of by Plaintiff do not amount to an employment practice of the Hospital and therefore, do not qualify as protected activity as required to state a claim for retaliation under Title VII or NYSHRL. Accordingly, it is respectfully recommended that Plaintiff's claims for retaliation under Title VII and NYSHRL (Counts Four and Five) be dismissed.

## 2.    Retaliation Under NYLL

With respect to Plaintiff's claim for retaliation under NYLL §215 (Count Six), the Hospital Defendants argue that Plaintiff cannot state a claim for retaliation under NYLL §215 because none of the conduct complained of as a basis for the retaliation claim in the Amended Complaint gives rise to a NYLL violation.[5]  Section 215(1)(a) prohibits employers from discharging, penalizing, discriminating against, or retaliating against an employee because that employee has complained of a violation of the state labor law.  *Castagna v. Luceno*, No. 09-CV-9332 (CS), 2011 U.S. Dist. LEXIS 45567, 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011). "To state a claim for unlawful retaliation in New York, a plaintiff must adequately plead 'while employed by the defendant . . . she made a complaint about the employer's violation of New York Labor Law and was terminated . . . as a result.'"  *Williams v. AAA S. New Eng.*, No. 13 CV 855 (VB), 2015 U.S. Dist. LEXIS 27435 at * 12, 2015 WL 864891 (S.D.N.Y. Mar. 2, 2015) (quoting *Higueros v. N.Y. State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (S.D.N.Y. 2007)).  A plaintiff must show that she 'complained about a specific violation of the Labor Law,'" *Castagna,* 2011 U.S. Dist. LEXIS 45567, (quoting *Epifani v. Johnson*, 65 A.D.3d 224, 882 N.Y.S.2d 234, 244 (2d Dep't 2009)), but an "informal complaint . . . that the employer is violating a provision of the Labor Law suffices." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 2009 U.S. Dist. LEXIS 12963, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009); *Mayer v. Neurological Surgery, P.C.*, No. 15-CV-0864, 2016 U.S. Dist. LEXIS 10260, 2016 WL 347329 at *3 (E.D.N.Y. Jan. 28, 2016).

Plaintiff does not allege a specific provision of the NYLL she claims was violated, rather Plaintiff states that she complained of "being treated unfairly as an Asian American female of

---

[5] Plaintiff asserted a claim for violation of NYLL § 194 for the first time in this Court and therefore this charge does not provide support for Plaintiff's claim of retaliation.

Taiwanese origin and as a whistleblower with regard to another doctor's negligence and malpractice." Am. Compl. ¶ 128.  Even accepting Plaintiff's allegation as true for purposes of this motion to dismiss, this claim must be dismissed.  Complaints regarding discrimination are not actionable under the New York Labor Law.  *See, e.g., Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013).  With respect to Plaintiff's allegation that she was retaliated against for reporting another doctor's negligence it is unclear that this complaint pertains to any section of the NYLL and therefore cannot support this claim.  *See Epifani v. Johnson*, 65 A.D.3d 224, 882 N.Y.S.2d 234, 236 (2d Dep't 2009) (holding that lower court should have dismissed retaliation claim based on complaint that did not clearly "pertain[] to any section of the [New York] Labor Law").

In her opposition to Defendants' motions to dismiss, Plaintiff argues that she is relying on the whistleblower provisions of Section 740 of the NYLL. Pl. Mem. at 6.  Section 740 of the New York Labor Law provides that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." N.Y. Lab. Law § 740(2)(a).

The Hospital Defendants argue that any claim pursuant to Section 740 is untimely. Section 740 of the NYLL has a one year statute of limitations.  *See Swanston v. Pataki*, No. 97 Civ. 9406 (MJL) (KTD), 1999 U.S. Dist. LEXIS 10756, 1999 WL 504905, at *5 (S.D.N.Y. July 15, 1999) ("The statute of limitations applicable to Section 740 claims requires a plaintiff to bring suit within a year of the retaliatory personnel action. N.Y. Lab. L. § 740(4)").  This statute of limitations is not tolled for the duration of time that an EEOC charge is pending.  *See*

*Abdallah v. City of New York*, No. 95 Civ. 9247(MGC), 2001 U.S. Dist. LEXIS 2616, 2001 WL 262709 (S.D.N.Y. Mar. 16, 2001); *Swanston*, 1999 U.S. Dist. LEXIS 10756 at *18.  Plaintiff filed the original complaint on July 17, 2017 and therefore the allegedly retaliatory conduct would have had to occur after July 17, 2016.  Plaintiff points to no conduct during that period. Thus, Plaintiff's attempt to bolster her NYLL retaliation claim by reference to the whistleblower provisions is of no avail.

Accordingly, it is respectfully recommended that Plaintiff's claim of unlawful retaliation pursuant to NYLL § 215 asserted against the Hospital Defendants be dismissed without prejudice to repleading a violation of NYLL.

E.    **State Law Claims**

1.    **Breach of Contract**

Plaintiff asserts a breach of contract claim against the Hospital Defendants arising out of an alleged breach of her employment Agreement (Count Fifteen).  The Hospital Defendants move to dismiss Plaintiff's breach of contract claim.  Hosp. Def. Mem. at 23.  "To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: '(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages.'" *Frontline Processing Corp. v. Merrick Bank Corp.*, 13-cv-3956, 2014 U.S. Dist. LEXIS 27571, at *5-*6 (S.D.N.Y. Mar. 3, 2014) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)); *see Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 593-94 (2d Cir. Jan. 7, 2014) (same). "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *Id*. (citing *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Here, the Hospital Defendants argue that there was not a breach of the Agreement because under its terms the Hospital Defendants had the right to terminate the contract without cause on 90-days notice pursuant to paragraph 17(b) of the Agreement.  Am. Compl. Ex. B, ¶17(b).  By letter dated May 15, 2015 the Hospital Defendants gave Plaintiff notice that the Agreement would terminate in 90 days.  Am. Compl., Ex. D.  Plaintiff does not refute this contention but rather repeats the allegations of the complaint which state that the Agreement, by its terms, had not yet ended.  Pl. Mem at 6-7.  Paragraph 17 unambiguously provided the Hospital Defendants the right to terminate the agreement without cause on 90-days notice.[6]   The Hospital Defendants provided the 90 day notice and therefore no breach occurred.  Accordingly, the undersign respectfully recommends that Plaintiff's claim for breach of contract against the Hospital Defendants should be dismissed.

## 2.    Implied Covenant of Good Faith and Fair Dealing

In Count Sixteen, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing arising out of the Hospital Defendants' early termination of her employment Agreement.  The Hospital Defendants argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of Plaintiff's breach of contract claim.  Hosp. Def. Mem. at 25.  "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter

---

[6] Other courts have found similar provisions to be unambiguous.  *See, e.g., In Touch Concepts v. Cellco P'ship,* 949 F. Supp. 2d 447, 468 (S.D.N.Y. 2013) ("the Agency Agreement provides that Verizon 'has the right to terminate this Agreement at any time, with or without cause, upon six (6) months prior written notice to Agent.' . . . The Court concludes that Paragraph 8.8 is unambiguous.").

claim should be dismissed as redundant." *Id.*  Plaintiff does not respond to this argument.

Accordingly, it is respectfully recommended that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count Sixteen) should be dismissed.

### 3.    Fraud

Plaintiff asserts a claim for fraud and misrepresentation against all Defendants (Count Seventeen).  Defendants move to dismiss Plaintiff's fraud claim because Plaintiff has failed to allege an actionable misrepresentation and because Plaintiff has failed to allege fraud with particularity as required by Rule 9(b).  Hosp. Def. Mem. at 26; Mad. Def. Mem. at 21.  Plaintiff has not responded to these arguments.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F3d 395, 402 (2d Cir. 2015).  On a motion to dismiss, allegations of fraud must satisfy the heightened pleading standards of Rule 9(b) by stating the circumstances constituting the fraud "with particularity."  Fed. R. Civ. P. 9(b).  The Second Circuit reads Rule 9(b) to require that a complaint "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Moreover, "though mental states may be pleaded 'generally,' Plaintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'"  *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)).  Generally,

"[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  The purposes of Rule 9(b)'s particularity requirements are "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991) (citations and internal quotation marks omitted).

With respect to the Hospital Defendants, Plaintiff alleges that they fraudulently misrepresented their intentions to renew her contract.  Am. Compl. ¶ 220.  This allegation is insufficient to support a fraud claim because future promises cannot form the basis of a fraud claim.  *Nadeem Saleemi v. Pencom Sys.*, No. 00-7775, 2000 U.S. App. LEXIS 31760 (2d Cir. Dec. 7, 2000) (future promises are not actionable as a fraud claim) (citing *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992)).  The *Stewart* Court noted the distinction between "a prospective business partner's promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representations of present fact, which give rise to a separable claim of fraudulent inducement." *Stewart*, 976 F.2d at 89 (internal quotations and citations omitted); *see also Kaplan v. Lazard Freres & Co.*, L.L.C., 99 Civ. 3428 (BSJ), 99 Civ. 4436 (BSJ), 2000 U.S. Dist. LEXIS 1244 ("[g]iven the explicit terms of the employment agreements--those agreements giving [Defendants] the right to terminate their employment at any time--plaintiffs could not have reasonably relied on oral statements" of continued employment).

Moreover, when a fraud claim is based on a future promise, the plaintiff must additionally show that "the defendants had no intention of carrying out [the promise] at the time

29

the promise was made." *Trabucco v. Intesa Sanpaolo, S.p.A,* 695 F. Supp. 2d 98, 108 (S.D.N.Y. 2010) (quoting *Olivieri v. McDonald's Corp.*, 678 F. Supp. 996, 1001 (E.D.N.Y. 1988) (citation omitted)).  To meet this standard the plaintiff must go beyond "a mere showing of nonperformance." *Id.* (citation omitted). "Courts have been hesitant to allow plaintiffs to tack fraud claims onto contract claims when the fraud claim amounts to nothing more than "allegations about [the defendant's] state of mind [regarding] the claim for breach of contract.'" *Trabucco v. Intesa Sanpaolo, S.p.A,* 695 F. Supp. 2d at 108 (quoting *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996)).  Plaintiff here has not satisfied this standard.

Further, Plaintiff alleges that the Hospital Defendants made "knowingly false statements regarding Plaintiff's employment, contract renewal and proposed employment" and "job requirements and the implementation of internal policy."  Am. Compl. ¶¶ 219, 223.  In addition, Plaintiff alleges that the Madonna Defendant "required that Plaintiff engage in abortion practices . . . and essentially 'lie' to CHS about the services."  *Id.* at ¶ 224.[7]  It is important to note that Plaintiff was never required to actually perform an abortion, since she never accepted the employment contract offered to her by the Madonna Defendants.  In addition, the clause requiring her to do so if she did accept the offer made to her by Madonna had been removed from early drafts of the agreement.  *See* Am. Compl., Ex. G.  Each of these allegations fail to satisfy Rule 9(b) in that Plaintiff fails to "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

---

[7] Plaintiff also alleges that the Madonna Defendants "attempted to engage Plaintiff . . . in a tax fraud scheme involving pre-loaded charge cards." *Id.* at ¶ 225.  According to Plaintiff, Defendant Goldstein indicated she could use them for personal expenses even though they were meant for business expenses.  *Id.*  This allegation cannot form the basis of a fraud claim because Plaintiff has failed to allege she relied upon this statement which caused an injury to Plaintiff.

and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Accordingly, it is respectfully recommended that Plaintiff's claim of fraud and misrepresentation (Count Seventeen) be dismissed.

### 4.    Intentional Infliction of Emotional Distress

Plaintiff asserts a claim for intentional infliction of emotional distress against all Defendants claiming Defendants engaged in outrageous conduct by creating a hostile work environment, increasing her work load and making provocative, threatening remarks on one occasion (Count Eighteen).  Am. Compl. ¶¶ 231, 232.  Defendants have moved to dismiss this claim on the grounds that it is time-barred and fails to state a claim.[8]

"To state a claim for intentional infliction of emotional distress, a party must allege '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Sesto v. Slaine,* 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)). "When pleading intentional infliction of emotional distress, '[t]he bar is extremely high, and this highly disfavored cause of action is almost never successful.'" *Id*. (quoting *Guan N. v. NYC Dep't of Educ.*, No. 11-cv-4299, 2013 U.S. Dist. LEXIS 2204, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013)). Indeed, to satisfy the pleading requirement, a plaintiff must allege conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id*. (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)).

---

[8] Because the Court finds Plaintiff has failed to state a claim for intentional infliction of emotional distress it has not addressed the Hospital Defendants' argument with respect to the statute of limitations.

"New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Mariani v. Consolidated Edison Co.*, 982 F. Supp. 267, 275 (S.D.N.Y.1997), aff'd, 172 F.3d 38 (2d Cir. 1998); *see also Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) (collecting cases). "The rare instances where the New York courts have found the complaint sufficient to state an [intentional infliction of emotional distress] claim in the employment context generally involve allegations of more significant battery, or improper physical contact." *Gilani v. NASD*, 1997 U.S. Dist. LEXIS 12287, No. 96 Civ. 8070, 1997 WL 473383, at *14 (S.D.N.Y. Aug. 19, 1997). "Where, as here, the plaintiff premises an intentional infliction of emotional distress claim on harassment, discrimination, or retaliation in the employment context, New York courts are particularly reluctant to find that such conduct is sufficiently extreme or outrageous to satisfy this demanding standard 'absent a deliberate and malicious campaign against the plaintiff.'" *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 631 (E.D.N.Y. 2012) (quoting *Fertig v. HRA Medical Assistance Program*, No. 10-CV-8191, 2011 U.S. Dist. LEXIS 48789, 2011 WL 1795235, at *6 (S.D.N.Y. May 6, 2011) and citing *Gioia v. Forbes Media LLC,* No. 09-CV-6114, 2011 U.S. Dist. LEXIS 113999, 2011 WL 4549607, at * 12 (S.D.N.Y. Sept. 30, 2011) ("[C]ourts within this circuit have generally found allegations of discrimination, wrongful termination, and denial of benefits insufficient to satisfy the rigorous standard for extreme and outrageous conduct.") (collecting cases); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("New York Courts are reluctant to allow [IIED] claims in employment discrimination cases.... Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism,

intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous.") (internal quotation marks and citations omitted); *Emmons v. City Univ. of New York,* 715 F. Supp. 2d 394, 424 (E.D.N.Y. 2010) ("As a general proposition, adverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims."))

Here, Plaintiff alleges that the Hospital Defendants engaged in outrageous conduct by "creating a hostile work environment . . . and [terminating] her employment prior to the contract expiration without cause" Am. Compl. ¶ 231.  With respect to the Madonna Defendants Plaintiff alleges that they engaged in outrageous conduct by "making provocative, threatening remarks to her when she was alone, requiring that [Plaintiff] perform abortions[9], obtain privileges to six additional hospitals, increase her work hours and get paid less than her male counterparts."  *Id*. at ¶ 232.  The standard for asserting an intentional infliction of emotional distress claim has been "'set deliberately high to ensure that a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad manners and hurt feelings are involved.'" *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729-30 (S.D.N.Y. 2014) (citing *Thai v. Cayre Grp.*, 726 F.Supp. 2d 323, 336-37 (S.D.N.Y.2010)).  Rather, a cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Howel lv. New York Post Co.,* 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)); *see also Matthews v. Malkus,* 377 F. Supp. 2d 350, 361 (S.D.N.Y. 2005). "Such extreme and outrageous conduct must be clearly alleged in order for the complaint to

---

[9] As discussed above Plaintiff was never required to actually perform an abortion.

33

survive a motion to dismiss." *Matthews*, 377 F. Supp. 2d at 361 (citing *Dillon v. City of New York*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1 (1st Dep't 1999)); *see also Sheila C. v. Povich*, 11 A.D.3d 120, 130-31 (1st Dep't 2004).

In the present case, Plaintiff's allegations do not rise to the level of outrageousness required to state a claim. *See, e.g.*, *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983), superseded by statute on other grounds as stated in *Leibowitz v. Bank Leumi Trust Co.*, 152 A.D.2d 169, 548 N.Y.S.2d 513 (2d Dep't 1989) (finding that plaintiff's allegations that he was transferred and demoted for reporting fraud, coerced to leave by being told that he would never be allowed to advance, discharged and ordered to leave immediately after reporting other alleged in-house illegal conduct, and forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings, fell "far short" of the "strict standard" for outrageous behavior").

Accordingly, the undersigned respectfully recommends Plaintiff's claim for intentional infliction of emotional distress (Count Eighteen) be dismissed.

### 5.   Negligent Infliction of Emotional Distress

Finally, Plaintiff asserts a claim for negligent infliction of emotional distress against all Defendants (Count Nineteen). Defendants have moved to dismiss this claim because, according to Defendants, Plaintiff has failed to state a claim.

"To recover for negligent infliction of emotional distress in New York, plaintiffs must show (1) that the defendant 'unreasonably endangered the physical safety of plaintiffs or caused them to fear for their safety' (2) causation, and (3) emotional injuries." *Schafer v. Hicksville Free Union Free Sch. Dist.*, No. 06-CV-2531, 2011 U.S. Dist. LEXIS 35435, 2011 WL 1322903, at *15 (E.D.N.Y. Mar. 31, 2011) (quoting *Nicholson v. A. Anastasio & Sons Trucking Co., Inc.*, 77

A.D.3d 1330, 1331, 909 N.Y.S.2d 244 (4th Dep't 2010)). "As with intentional infliction of emotional distress, plaintiffs suing for negligent infliction of emotional distress must establish extreme and outrageous conduct." *Id.; see also Regeda v. City of New York*, No. 09-CV-5427, 2012 U.S. Dist. LEXIS 186256, 2012 WL 7157703, at *12 (E.D.N.Y. Sept. 7, 2012) ("The elements of a claim for intentional infliction of emotional distress are nearly identical to a claim for negligent infliction of emotional distress."), report and recommendation adopted by, 2013 U.S. Dist. LEXIS 22313, 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013)).  For the reasons discussed above, Plaintiff has failed to allege extreme and outrageous conduct sufficient to support her claim and accordingly, the undersigned respectfully recommends that Plaintiff's claim for negligent infliction of emotional distress (Count Nineteen) be dismissed.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1

(2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated:  Central Islip, New York        **SO ORDERED:**
        March 8, 2019

                                        _____/s_____
                                        ARLENE R. LINDSAY